IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DIANA LYNN CHAMBERS,**                          Civil No. 1:15-cv-00305-CL

        Plaintiff,                                     **OPINION & ORDER**

   v.

**CAROLYN W. COLVIN**
Commissioner of Social Security,

        Defendant.

_____

Arthur W. Stevens III
Black, Chapman, Webber & Stevens
221 Stewart Ave. Ste. 209
Medford, OR 97501
      Attorney for Plaintiff

Billy J. Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Lisa Goldoftas
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
        Of Attorneys for Defendant

CLARKE, Magistrate Judge:

      Plaintiff Diana Lynn Chambers ("Chambers") seeks judicial review of the Social Security

Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social Security

Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons explained below,

the Commissioner's decision is reversed and this case remanded for further proceedings consistent

with this Opinion and Order.

## BACKGROUND

      Born on October 13, 1958, Chambers applied for benefits on April 13, 2011. Tr. 12, 91. She

alleges disability beginning on August 1, 2010. *Id.* The Commissioner denied her applications

initially and upon reconsideration. Tr. 12, 100-01, 137. Thereafter, an Administrative Law Judge

("ALJ") held a hearing on June 5, 2013. Tr. 33-79. The ALJ issued a decision finding Chambers not

disabled on June 24, 2013. Tr. 12-25. The Appeals Council declined review on July 31, 2014. Tr.

1-3. Chambers now appeals to this Court.

Page 2 – OPINION & ORDER

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404. 1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404. 1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404. 1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work

Page 3 – OPINION & ORDER

existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404. 1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Chambers had the following severe impairments: degenerative disc disease of the cervical spine; obesity; mood disorder not otherwise specified ("NOS"); anxiety disorder NOS; borderline personality disorder; and history of alcohol dependence. Tr. 14. However, the ALJ found that none of the severe impairments, singly or in combination, met a listing under the Act. Tr. 15-16. The ALJ concluded that Chambers retained the following RFC:

> light work . . . except she could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but could never climb ladders, ropes, or scaffolds; she could occasionally reach overhead with her bilateral upper extremities; she would have no to mild limitations in her ability to maintain attention and concentration for extended periods; she would have mild limitations in her ability to carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting; and she would have mild to moderate limitations in her ability to work in coordination with others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without

> distracting them or exhibiting behavioral extremes, to maintain
> socially appropriate behavior, and to set realistic goals or make plans
> independently of others.

Tr. 18-19. At step three, the ALJ found Chambers was capable of performing her past relevant work

as a "soft counter supervisor and retail associate." Tr. 24. The ALJ therefore determined Chambers

was not disabled under the Act. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v.*

*Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.*

This Court must weigh the evidence that supports and detracts from the ALJ's conclusion.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715,

720 (9th Cir. 1998)). The Court may not substitute its judgment for that of the Commissioner. *Id.*

(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v.*

*Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are

insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d

at 1193. However, this Court may not rely upon reasoning the ALJ did not assert in affirming the

ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Chambers asserts the ALJ erred for the following reasons: (1) failing to provide legally sufficient rationales for discounting her testimony; (2) improperly rejecting the opinions of a treating mental health provider and her supervising physicians; (3) inappropriately making medical findings and substituting his own opinion for that of treating medical sources; (4) failing to consider the combined effect of Chambers' severe and non-severe impairments; and (5) erroneously discrediting lay witness testimony. Pl.'s Br. 5-6.

### I. Plaintiff's Credibility

Chambers argues the ALJ failed to apply the correct legal standards in evaluating her testimony regarding the symptoms and functional effects caused by her mental impairments. Pl.'s Br. 27. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). First, the ALJ must determine whether the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical

Page 6 – OPINION & ORDER

evidence" is legally insufficient. *Robbins*, 466 F.3d at 882. Nonetheless, the ALJ's credibility finding

may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See*

*Batson*, 359 F.3d at 1197.

Chambers first argues the ALJ failed to evaluate her symptom testimony because the

credibility determination was premised solely on a lack of evidentiary support for her subjective

complaints. Pl.'s Br. 27 (citing *Light v. Soc. Sec. Admin.*, 119, F.3d 789, 792 (9th Cir. 1997);

*Robbins*, 466 F.3d at 883). Chambers' argument is unavailing because the ALJ provided additional

valid rationales for discounting her credibility. *See Bray*, 554 F.3d 1219, 1227 (9th Cir. 2008) (citing

*Batson*, 359 F.3d at 1197). The court further notes that to the extent Chambers did not raise specific

credibility evaluation issues in her opening brief, those arguments are waived. *See Indep. Towers of*

*Wash. V. Wash.*, 350 F.3d 925, 929 (th Cir. 2003) (the court cannot manufacture arguments for an

appellant and therefore will review only issues which are argued specifically and distinctly in a

party's opening brief) (citations and internal quotations omitted); *see also Carmickle v. Comm'r, Soc.*

*Sec. Admin.,* 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Accordingly, insofar as the ALJ provided

valid rationales in addition to lack of objective medical support for Chambers' subjective symptoms,

her argument is unavailing; further, the court will review only the validity of the credibility rationales

raised by Chambers in her opening brief.

Chambers specifically raises whether the ALJ correctly assessed her credibility based on the

conclusions of agency physician Dorothy Anderson, Ph.D., who indicated Chambers was capable

of performing simple tasks with normal supervision. Tr. 22, 87. Chambers asserts the ALJ erred by

relying on Dr. Anderson's opinions, and the doctor reviewed only medical evidence through August

2011. Pl.'s Br. 28. The ALJ indicated he accorded "some weight" to Dr. Anderson's opinion, "as she

Page 7 – OPINION & ORDER

reviewed much of the medical evidence, but . . . later opinions better summarize the claimant's limitations." Tr. 22. Thus, contrary to Chambers' contention, the ALJ accounted for the fact that Dr. Anderson reviewed only a portion of the ultimate medical evidence. Further, it is unclear whether the ALJ used Dr. Anderson's opinion at all in assessing Chambers' credibility. As such, Chambers' argument is inapposite.[1]

Chambers next argues the ALJ erred by indicating he "reviewed all the evidence and finds that the claimant's allegations of mental limitation lack credibility to the extent they are inconsistent with the residual functional capacity set forth above." Pl.'s Br. 28; tr. 23. In support, Chambers cites *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) for the proposition that an ALJ may not reject a claimant's testimony "simply" because it is inconsistent with the ALJ's RFC assessment. Pl.'s Br. 28. Plaintiff's argument misses the mark, however, as *Treichler* does not hold that it is erroneous *per se* for an ALJ to employ boilerplate language such as "the allegations lack credibility to the extent they are inconsistent with the RFC." Rather, *Treichler* held the language at issue *alone* is insufficient to meet the specificity requirement for rejecting symptom testimony, as the boilerplate language is characteristically followed by the specific findings made by the ALJ. *Treichler*, 775 F.3d at 1102-03. As discussed above, the ALJ included the boilerplate, but unlike the

---

[1] Chambers also argues "the ALJ erred in his reliance on the medical records cited in his recitation on pages 10 and 11 of his Decision . . . apparently intended to support his assertion 'the objective medical evidence does not fully support the level of limitation claimed.'" Pl.'s Br. 28. Of the numerous medical opinions and providers mentioned by the ALJ on pages 10 and 11, Chambers takes issue only with the discussion of Dr. Anderson's findings. *Id.*, *see* tr. 21-22. To the extent Chambers contends other medical opinions expressed the relevant pages negatively impacted her credibility, the argument is completely lacking in specificity, and is, therefore, waived. *Indep. Towers of Wash.*, 350 F.3d at 929.

situation in *Treichler*, he also set forth specific reasons for impugning Chambers' credibility. Tr. 20-23. As such, Chambers' argument lacks merit.

The Commissioner, in addition to arguing Chambers waived credibility arguments absent in her opening brief, included a summary of the credibility rationales Chambers did not challenge. Def.'s Br. 8-12. Chambers, in her Reply Brief, proceeds to present arguments in opposition to the Commissioner's version of the ALJ's credibility findings, arguing issues Chambers failed to present in her Opening Brief. *See generally* Pl.'s Reply 1-11. As explained above, the court finds the Commissioner successfully argued that issues not raised by Chambers in her opening brief were waived pursuant to *Independent Towers of Wash.* However, it behooved the Commissioner to lend additional support for the ALJ's credibility finding by providing an alternative argument, in the event the court disagreed with the primary waiver argument. Therefore, as the court finds the Commissioner's additional summary of the credibility findings are unnecessary for the purpose of this review, Chambers' arguments in response to the unchallenged credibility rationales are inapposite. *See Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1162 (9th Cir. 2007) (an appellate court will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief, even if such matters are raised in appellant's reply brief) (citing *Indep. Towers of Wash.*, 350 F.3d at 929). As such, the court declines to submit the Commissioner's alternative arguments to review.

Finally, Chambers argues the ALJ's credibility finding is erroneous because it does not include medical evidence submitted after the hearing which became part of the record when it was accepted by the Appeals Council. Pl.'s Br. 29. The evidence at issue includes a letter and a "mental impairment questionnaire" signed by Paige Buell, Psychiatric Mental Health Nurse Practitioner

Page 9 – OPINION & ORDER

("PMHNP"), and Henry Elder, M.D., whom Chambers identifies as supervisor the of Chambers' various mental health providers. Pl.'s Br. 20-21; tr. 861-68. As a threshold matter, the court agrees that pursuant to *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012), the post-decision evidence is part of the administrative record and therefore subject to review. *See id.* at 1164. Chambers asserts the responses to the impairment questionnaire "substantiated and corroborated the severity of [Chambers'] symptoms and their functional effects, as relates to her capacity to persist in full-time employment. " Pl.'s Br. 29. Chambers' argument lacks specificity, however, as it fails to identify which of the ALJ's credibility findings the "new" evidence impugns. *See id.* Chambers further asserts that the opinions expressed in the questionnaire "provide a far better gauge than the opinions of non-examining and non-treating physicians[,]" but the argument concerns the weighing of medical opinions rather than the evaluation of Chambers' credibility, and will be addressed in the next section of this Opinion. *Id.*

Despite its lack of specificity, Chambers' argument may be generally read as supporting the proposition that the new evidence casts doubt upon the ALJ's conclusion that Chambers' symptom complaints were not substantiated by the medical record. However, assuming Chambers' assertion is valid, the ALJ nonetheless provided additional rationales for his adverse credibility finding. For example, the ALJ noted plaintiff's allegations about the limitations caused by her mental impairments were contradicted by her own reports that her bipolar disorder was well-managed; she provided inconsistent testimony about her alcohol use, and indicated that she stopped working due to stress and conflict with her supervisor, although the evidence showed she was not completely disabled by stress and anxiety as she had maintained work before, and had planned to apply for work in the summer of 2011. Tr. 19, 21, 22, 23. All of these are generally valid categories for an ALJ to

discredit a claimant's credibility, and Chambers does not contest the findings in her Opening brief. Insofar as the ALJ provided other permissible rationales for discrediting Chambers' symptom allegations, the overall credibility determination may be upheld. *Batson*, 359 F.3d at 1197. On this record, even assuming the new evidence negates one of the rationales provided by the ALJ, the other rationales direct the court to uphold the ALJ's ultimate credibility finding.

## II. Medical Opinion Evidence

Chambers argues the ALJ improperly evaluated the medical opinion evidence on several fronts. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often by entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining providers' opinions Chambers wishes to credit were contradicted by other treating and examining providers, as well as the state medical examiners. Tr. 20-21. Accordingly,

Page 11 – OPINION & ORDER

the applicable legal standard for evaluating the ALJ's rationales is specific-and-legitimate. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Chambers first assignment of error is the ALJ's evaluation of the opinion of treating provider Trace Wonser, Qualified Medical Health Provider ("QMHP"). Ms. Wonser treated Chambers at Klamath County Mental Health ("KCMH") in 2012 and 2013, and completed a psychological questionnaire in January 2013 which covered a variety of functional areas. Tr. 668-73. Ms. Wonser's report includes diagnoses of bipolar II, borderline personality disorder, and post-traumatic stress disorder ("PTSD"). Tr. 668. The report further indicates severe restrictions resulting from mental impairments in numerous work-related categories, such that she would likely be precluded from any substantial gainful activity. Tr. 669-73.[2] The ALJ found Ms. Wonser's conclusions were not supported by the record, noting that Chambers reported feeling "'great' psychosocially" just one month after Ms. Wonser's evaluation, and she "had no recent urges to harm herself." Tr. 23. The ALJ concluded Chambers "continued to report depressive and anxiety symptoms . . . but nothing that would limit her to the extent outlined by Ms. Wonser." *Id.* Thus, the ALJ accorded Ms. Wonser's January 2013 report "no weight." *Id.*

Chambers contends the ALJ's assessment of Ms. Wonser's report did not comply with the requirements of Social Security Ruling ("SSR") 06-03p. The ruling explains that medical providers' opinions are organized on a hierarchy, with licensed physicians such as doctors and psychologists – "acceptable medical sources" – at the top, and "other sources," such as nurse practitioners and licensed clinical social workers, below. SSR 06-03p, *available at* 2006 WL 2329939, *1-2. The

---

[2] Chambers further asserts Ms. Wonser's conclusions, if credited, would exceed the minimum requirements for meeting up to three mental impairment listings: 20 C.F.R. Part 404 Subpt. P, App. 1, §§ 12.04, 12.06 and/or 12.08. Pl.'s Br. 19-20.

difference between the two categories of provider is substantial: only acceptable medical sources can establish the existence of an impairment, provide medical opinions, and may be considered "treating sources" entitled to controlling weight. *Id.* at *2. Alternatively, "other sources" may provide evidence illustrating the severity of an impairment "and how it affects the individual's ability to function." *Id.* The ruling further explains,

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources" . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects . . . .

*Id.* at *3. Importantly, the ruling establishes that, "depending on the facts of the case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the opinion of a treating source."[3] *Id.* at *5. Chambers asserts that by according Ms. Wonser's opinions no weight, the ALJ necessarily failed to comply with SSR 06-03p. Pl.'s Br. 22-23. However, SSR 06-03p does not preclude an ALJ from according no weight to a treating source opinion, even if that source has a significant treating history. Rather, the ruling requires the ALJ to consider other medical sources, and that an ALJ *may* accord an "other source" more weight than an

---

[3] SSR 06-03p identifies the following factors in weighing the opinions of "other sources": (1) length and frequency of treatment by source; (2) consistency with other evidence; (3) degree of evidentiary support for opinion; (4) how well the source's opinion is explained; (5) whether the source's expertise is related to a claimant's impairment; and (6) any other factors that tend to support or refute the opinion. *Id.* at *5-6.

Page 13 – OPINION & ORDER

"acceptable medical source," depending on the particular circumstances. SSR 06-03p at *3-5. As such, an ALJ does not err *per se* by according a source no weight. *See, e.g.*, *Ball v. Colvin*, 607 Fed.Appx. 709 (9th Cir. 2015) (ALJ did not err by according no weight to inconsistent opinions of treating chiropractor).

Chambers further argues the evidence submitted post-decision invalidates the ALJ's assessment of Ms. Wonser's opinions. In the letter admitted to the record, PMHNP Buell indicated she reviewed Chambers' records, including the January 2013 evaluation authored by Ms. Wonser, and was in complete agreement with the evaluation's conclusions. Tr. 861-62. In addition, Ms. Buell and Henry Elder, M.D. completed a "mental impairment questionnaire" in July 2013. Tr. 863-68. Ms. Buell and Dr. Elder provided virtually identical responses to those provided in Ms. Wonser's earlier assessment, with only slight variations. *Compare* tr. 668-673 *to* tr. 863-68. In short, Ms. Buell and Dr. Elder indicated Chambers is severely limited in a number of mental abilities and aptitudes required for unskilled work (tr. 865); has some marked and extreme functional limitations (tr. 867); and would be expected to miss more than four workdays per month (tr. 868). Thus, Chambers asserts the second evaluation form substantiates and corroborates the first evaluation form, and that both forms should be evaluated as if they were the opinions of an "acceptable medical source" because they were endorsed by Dr. Elder.[4] Pl.'s Br. 24.

The ALJ accorded Ms. Wonser's evaluation "zero weight" because its "conclusions are not supported by the remaining evidence or any other accepted medical opinion." Tr. 23. To discredit "other" medical source opinions, an ALJ must identify "reasons germane to each witness." *Molina*

---

[4] Because both the January and July assessments are virtually identical, the court does not differentiate its evaluation of the assessments' contents.

*v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted). The ALJ explained that Ms. Wonser's conclusions were "not supported by the remaining evidence or any other accepted medical opinion," and although the rationale is somewhat vague, it is nonetheless sufficient to meet the "germane" threshold. Indeed, at least at the time the ALJ drafted the decision, his statement regarding the other accepted medical opinions was accurate, and insofar as the ALJ opined the conclusions were not supported by the remaining evidence – specifically Chambers' contemporaneous report of feeling "great" psycho-socially – his interpretation was not irrational[5], and was therefore valid. *Carmickle*, 533 F.3d at 1164.

However, the ALJ did not have the opportunity to review the medical opinion evidence submitted post-decision. *See* tr. 861-68. As noted *supra*, the letter signed by Ms. Buell and the mental impairment questionnaire signed by Ms. Buell and Dr. Elder, are properly before this court pursuant to *Brewes*, 682 F.3d at 1159-60. Accordingly, the court is now tasked with considering whether the ALJ's decision remains supported by substantial evidence and based on the proper legal standards and considering the record as a whole. *Lingenfelter*, 504 F.3d at 1035. Accordingly, in situations where medical evidence is submitted after the administrative hearing and incorporated into the record pursuant to *Brewes*, the court must specifically review the ALJ's stated reasons for discrediting testimonial or medical evidence to ensure those reasons continue to pass muster under the relevant legal threshold, despite the new evidence. In the instant case, the ALJ provided a germane reason to discredit the "other source" opinion of Ms. Wonser: her opinion was "not supported by the remaining evidence or any other medical source opinion." Tr. 23. However, with the introduction of Dr. Elder's opinion, the ALJ's reasoning is no longer valid because Ms. Wonser's

---

opinion is now supported by other evidence, which happens to be endorsed by an "acceptable medical source." As such, the ALJ's rationale is not germane to her when considering the record as a whole. Therefore, the ALJ's reasoning does not meet the required legal threshold. Further, because the ALJ accorded Ms. Wonser's opinion no weight, the error was not harmless, as the opinions expressed therein could potentially affect the ultimate disability decision.

The Commissioner argues the new opinion evidence does not change the outcome of this case for several reasons. First, the Commissioner cites *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) for the proposition that a medical opinion "solicited after an individual is found not disabled is not persuasive, particularly when it is inconsistent with earlier statements." Def.'s Br. 15-16. In *Weetman*, the court found the post-decision evidence unpersuasive because the doctor's opinion the claimant was "totally disabled" was inconsistent with his own chart notes. *Weetman*, 877 F.2d at 23. Here, however, the Commissioner does not identify any such internal inconsistency. *See* Def.'s Br. 15-16. Thus, the argument fails. Further, to the extent the Commissioner contends evidence submitted post-decision is generally not persuasive, the contention is obviated by *Brewes*, which not only reversed the ALJ's decision based on post-decision opinion evidence, but was so persuaded it remanded the case for immediate payment of benefits. *See Brewes*, 682 F.3d at 1164-65.

The Commissioner next argues, "the new evidence appears to reiterate the conclusions of Ms. Wonser based on the opinion of a nonexamining physician." Def.'s Br. 16. Review of the record reveals that Ms. Bruell treated Chambers at least once, on April 3, 2013. Tr. 787-91; 863. However, as a PMHNP, Ms. Buell is not an "acceptable medical source" under the Act. Nonetheless, as discussed above, her opinion as a treating provider is potentially probative. *See* SSR 06-03p. Thus,

Page 16 – OPINION & ORDER

the Commissioner's assertions that Ms. Bruell's opinion is merely a reiteration, or based on the opinion of a non-examining physician, are unpersuasive.

However, the Commissioner's contention that Dr. Elder is at most an examining medical provider is well-taken. The court is unable to locate any reference to Dr. Elder aside from the new evidence, nor is there any indication the doctor ever treated or examined Chambers. Additionally, unlike the cases which Chambers cites in support of her argument, there is no affirmative evidence that Dr. Elder was directly supervising Ms. Buell or Ms. Wonser, or managing her treatment in any way. Pl.'s Br. 23; *see Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003) (doctor accorded "treating" status based on one-time examination, close supervisory relationship with mental health providers, and management of medications); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) ("acceptable medical source" weight imputed to nurse practitioner who "work[ed] closely with, and under the supervision of" doctor); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (nurse practitioner's opinion considered that of doctor based on evidence of "numerous" consultations and "close[] supervision"). Moreover, recent Ninth Circuit cases have questioned the continuing precedential value of *Gomez* following changes to 20 C.F.R. § 416.913(6). *See Molina*, 674 F.3d at 1111 n.3; *see also Jerome v. Colvin, available at* 2015 WL 2450876, *4 (W.D.Wash. May 21, 2015) (unpublished opinion); *Miller v. Colvin, available at* 2015 WL 6455097 at *4 (W.D.Wash. Oct. 26, 2015) (unpublished opinion).

Nevertheless, even if Chambers has not shown that Dr. Elder was sufficiently involved with Chambers' treatment for his opinion to warrant "treating source" weight, substantial evidence indicates Dr. Elder at least reviewed and endorsed with the responses in the July 2013 impairment questionnaire. Accordingly, the new evidence represents at least a non-examining physician's

Page 17 – OPINION & ORDER

opinion from an "acceptable medical source" that Chambers' mental impairments result in "extreme" functional limitations in social functioning and concentration, persistence, or pace; and that on average, Chambers would likely miss more than four word days per month. Tr. 867-68. Such limitations, if accorded full weight, would almost certainly compel a finding that Chambers is disabled under the Act, either under Listings 12.04 (Affective Disorder), 12.06 (Anxiety Related Disorders), and/or 12.08 (Personality Disorders); or pursuant to testimony from a VE regarding her inability to perform substantial gainful activity in the national economy, including her past relevant work. *See* 20 C.F.R. Part 404, Subpt. P, App. 1; *Treichler*, 775 F.3d at 1096 (no work would be available for a person who would miss more than two days of work per month)[6].

The Commissioner argues that notwithstanding Dr. Elder's opinion, the ALJ's decision should not be disturbed because "there is more than a scintilla of evidence to support the interpretations of the medical evidence the ALJ provides, and that interpretation is based on the correct legal standards[.]" Def.'s Br. 16. However, as explained above, the court is tasked with reviewing the entire record not only for substantial evidence, but also for compliance with the proper legal standards. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193. In light of the new evidence, the ALJ's outright rejection of Chambers' treating physician does not comply with the relevant legal standards, as the rationale is not germane. Further, the new evidence creates unresolved issues of fact regarding the severity and functional effects of Chambers' mental impairments. Therefore, the Commissioner's contention that "the new evidence does not change the fact that substantial evidence supports the ALJ's decision" is unavailing. *See* Def.'s Br. 16.

---

[6] Nevertheless, a reviewing physician's opinion is generally accorded less weight than that of a treating or examining physician. *Ghanim v. Colvin*, 762 F.3d 1154, 1160 (9th Cir. 2014) (citation omitted).

Page 18 – OPINION & ORDER

### III. Remand for Further Proceedings

Chambers also alleges the ALJ's step three finding that she did not meet a listing under 20 C.F.R. Part 404 Subpt. P, App. 1 § 12.00 were erroneous, and that the ALJ did not provide germane reasons to discount the testimony of the lay witness. However, because the court has determined this case requires remand based on the post-decision evidence, the court declines to address the remaining issues, as further development of the medical record may affect the analyses.

Chambers contends this case should be remanded for immediate payment of benefits. In order to remand a case for benefits, three requirements must be met: first, the ALJ has provided legally insufficient reasons to reject evidence, be it claimant testimony or medical opinion; next, the record has been fully developed and further proceedings would not serve any useful purpose; and finally, if the improperly discredited evidence were credited as true, the ALJ would be obligated to find Plaintiff disabled on remand. *Treichler*, 775 F.3d at 1105-06. However, even where all three requisites are met, but "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled," further proceedings are appropriate. *Garrison*, 759 F.3d at 1021.

Here, the court concludes that even assuming all of the three requisites were met, doubt remains as to whether Chambers is disabled under the Act. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. With the introduction of Dr. Elder's opinion, the medical opinion evidence is starkly divided on the limiting effects of Chambers' mental impairments. For example, although Dr.

Page 19 – OPINION & ORDER

Elder reported extreme limitation in concentration and attentions, Dr. Moore reported only mild limitations. Similarly, while Dr. Elder noted extreme limitation in social functioning, Dr. Moore indicated only mild or moderate limitation. Depending on the weight accorded to the opinions of Dr. Elder and/or Ms. Wonser, Chambers could be found either to meet one of the relevant listings, or otherwise disabled based on absenteeism and/or other functional limitations. Alternatively, should an ALJ, applying the proper legal standards, accord Dr. Elder's opinion little weight, an adverse disability finding may be appropriate. In either case, it is clear to the court that the new evidence warrants a remand for consideration by an ALJ, as the ALJ, rather than this court, is the appropriate arbiter of factual conflicts and ambiguities in the medical evidence. *Id.* at 1098. Therefore, the ALJ's decision must be reversed and this case remanded on an open record for further proceedings. *Burrell*, 775 F.3d at 1142.

## CONCLUSION

Because the Commissioner's final decision is not supported by substantial evidence and free from harmful legal error, the decision is be REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

DATED this ___ day of March, 2016.

Mark D. Clarke
United States Magistrate Judge

Page 20 – OPINION & ORDER